J-A22011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KYLEE SHAWN LANKFORD :
:
Appellant : No. 261 WDA 2022

Appeal from the PCRA Order Entered February 1, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0011414-2017

BEFORE: OLSON, J., DUBOW, J., and COLINS, J.*

MEMORANDUM BY OLSON, J.: **FILED: SEPTEMBER 29, 2022**

Appellant, Kylee Shawn Lankford, appeals from the order entered on

February 1, 2022, dismissing his first petition filed pursuant to the Post-

Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

We previously explained the facts and procedural history of this case as

follows:

> [Appellant] was charged ... in connection with a robbery and
> murder[s] that occurred in the early morning hours on September
> 1, 2017. Melanie Robb and Kimberly Lesko died in the robbery as
> a result of gunshot wounds [they sustained during the episode].
> Another victim, Mark Jordan, was shot in the face during the
> robbery and sustained serious bodily injury. Robert Brown was
> also present in the home when the robbery and murders occurred.
> While not legally married, Mr. Brown lived with Ms. Robb for
> approximately 22 years and the two considered themselves
> husband and wife. Mr. Brown was not physically harmed in this
> incident.

---

* Retired Senior Judge assigned to the Superior Court.

> [Appellant] committed the robbery and murder[s] with his co-defendant, Miras Kelly, who testified that [Appellant] shot all of the victims.
>
> The jury returned guilty verdicts for [two counts of second-degree murder, three counts of robbery, and one count each of burglary, conspiracy, and firearms not to be carried without a license[1]] and the trial court sentenced [Appellant] to life imprisonment.

*Commonwealth v. Lankford*, 237 A.3d 452, at \*1 (Pa. Super. 2020) (unpublished memorandum).  This Court affirmed Appellant's judgment of sentence in an unpublished memorandum filed on May 14, 2020.  *Id.* Appellant did not appeal that determination to the Pennsylvania Supreme Court.

On March 24, 2021, Appellant filed a timely *pro se* PCRA petition.  The PCRA court appointed counsel to represent Appellant.  Appointed counsel filed an amended PCRA petition on October 4, 2021. On November 3, 2021, the trial court issued notice of its intent to dismiss the PCRA petition without an evidentiary hearing pursuant to Pa.R.Crim.P. 907.  In response, Appellant requested leave to file a supplemental PCRA petition raising an additional claim.  The PCRA court granted leave and accepted the supplemental PCRA petition.  On January 11, 2022, the PCRA court again issued notice of its intent to dismiss the PCRA petition without an evidentiary hearing pursuant to

---

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 3502(a)(1)(i), 903, and 6106, respectively.

- 2 -

Pa.R.Crim.P. 907. Appellant did not respond. On February 1, 2022, the PCRA

court entered an order denying Appellant relief. This timely appeal resulted.[2]

On appeal, Appellant presents the following issue for our review:

Did the [PCRA] court abuse its discretion in denying the PCRA petition, as amended, without a hearing, insofar as there was a genuine issue concerning material facts; specifically, that trial counsel was ineffective for not objecting to the admission of the videotape of the police interrogation, or requesting a mistrial, and for not objecting to or requesting a mistrial during the [Commonwealth's] closing argument upon the exploitation of [Appellant's] post-arrest silence?

Appellant's Brief at 4.

Appellant's ineffective assistance of counsel claim under the PCRA is

two-fold which he summarizes as follows:

[T]rial counsel was ineffective for not objecting to the admission of the videotape of the police interrogation, or requesting a mistrial, where [Appellant] stated that he did not want to speak to the police, and the sole purpose of showing the jury the tape was to highlight [Appellant's] silence by refusing to implicate anyone in the commission of the crime. Counsel was also ineffective for not objecting to or requesting a mistrial during the [Commonwealth's] closing argument, which exploited [Appellant's] post-arrest silence. [Appellant] was prejudiced due to counsel's omissions insofar as it was likely that the jury was led to improperly consider [Appellant's] silence as a tacit admission of guilt[].

*Id.* at 8. Appellant argues that because "there is no record of trial counsel's

rationale for not objecting … the order dismissing [Appellant's PCRA] petition

_____

[2] Appellant filed a notice of appeal on February 28, 2022. On March 14, 2022, Appellant filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On March 22, 2022, the PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a).

should be vacated and the case remanded for an evidentiary hearing." *Id.* at 19-20.

We adhere to the following standards:

In reviewing the PCRA court's denial of relief, we examine whether the determination is supported by the record and free of legal error. We will not disturb the court's findings unless there is no support in the record. It is an appellant's burden to persuade us that the PCRA court erred and that relief is due.

[…C]ounsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. To obtain relief based on ineffective assistance of counsel, the petitioner must establish: (1) the underlying claim is of arguable merit; (2) there was no reasonable basis for counsel's action or failure to act; and (3) but for counsel's error, there is a reasonable probability the result of the proceeding would have been different. Failure to satisfy any of the three prongs is fatal to the claim. It is well-settled that counsel cannot be held ineffective for failing to pursue a meritless claim.

*Commonwealth v. Thomas*, 270 A.3d 1221, 1226 (Pa. Super. 2022) (internal citations, quotations, and original brackets omitted).

Appellant presents one issue, with two subparts, pertaining to trial counsel's representation. We will examine each part of Appellant's claim in turn. Regarding the videotaped police interview, Appellant asserts:

During the videotape[d police interview], [Appellant] told the police that he didn't want to talk to them anymore. He also didn't implicate anyone, including himself, in the commission of the shooting. In contrast, the jury heard that others, specifically Cameron Kirk, Miras Kelly, and Dalyn Jackson, did talk to the police about their role in the shooting, minimized their involvement, and pointed the finger [at Appellant].

*Id.* at 10 (record citations and original brackets omitted). Accordingly, Appellant claims that the jury was led to conclude that his silence was an adverse inference of guilt, trial counsel's failure to object constituted ineffective assistance, and, therefore, he was entitled to a new trial. *Id.* at 18.

> On this portion of Appellant's claim, the PCRA court determined:
>
> [… Appellant] alleges trial counsel was ineffective for failing to object to the admission of the videotape of [Appellant's] police interrogation. However, it is clear from the [trial] transcript that trial counsel had a strategic purpose for permitting this testimony. Trial counsel for [Appellant] cross-examined the detectives involved in the interrogation at great length, eliciting testimony from [one] detective that he lied to [Appellant] and used techniques to "break" [Appellant]. It appears a reasonable strategy of tr[ia]l counsel to permit the testimony of the detective in an effort to paint the picture that the interactions between [Appellant] and the police were pressured or coerced and therefore improper or corrupt. Accordingly, [the PCRA c]ourt [found] there was a reasonable strategic basis for trial counsel to permit the videotape of the police interrogation [to be entered into evidence].

PCRA Court Opinion, 3/22/22, at 6.

Upon review, we agree with the PCRA court's assessment. There is no dispute that Appellant did not incriminate himself or implicate another during the recorded police video. Instead, Appellant flatly denied his involvement. After the video of the police interview with Appellant was played for the jury, defense counsel questioned the investigating detective at length about the interview techniques used by the police. N.T., 7/20/2018, at 20-30. The investigating detective admitted that the police lied to Appellant by telling him

there were eyewitnesses to the crimes as "part of the ruse to get a person to confess" and "designed to break down a person's will." *Id.* at 20-22. The investigating detective acknowledged that he continued questioning Appellant even though Appellant asked to stop the interview. *Id.* at 29-30. However, the investigating detective also admitted that Appellant adamantly told the police that he did not commit the crimes. *Id.* at 30.

Moreover, during closing argument, trial counsel argued:

You [] heard from [the investigating detective who interviewed Appellant]. And you saw the interview of [Appellant]. You got to hear [Appellant's] voice and you got to see him during that interview. And the detective told you we'll lie, we'll make stuff up, we'll try to intimidate on occasion. He said he didn't do it here, but they will on occasion. They would try to ingratiate on occasion and said he didn't do it here. You saw the interview. During the interview, if you need -- if you want to help yourself, you got to tell us what you did. We have evidence, we know they certainly tried to make [Appellant] believe that the two surviving witnesses could tell on him and say that he was the person who did it. And I would submit to you if [Appellant] had done it and there were two surviving people, he would be afraid of that. But what did he say? He said I didn't do this. My life is over. I'm being blamed for this. I'm being arrested for two white women getting killed. My life is done, but I didn't do this. This isn't me, this isn't my family, my family are good people, they are my parents, they're God fearing they're involved in church. I don't do this stuff. Well, they saw you and you need to tell us --maybe you can explain, tell us if you saw a guy with a gun, if you tell us that, maybe that could be your reason why [you] fired, that you were afraid, and that maybe that would mitigate it for you. Right? I mean, we heard this on the tape. And [Appellant] doesn't break down and say I did it, that was me, you're right, if there's eyewitnesses they must have seen me. Obviously if that man saw me shoot him, then he's going to be able to identify me. I better say I saw somebody with a gun, like you suggested, or it wasn't me who shot, it was the other guy. He doesn't do any of that. He doesn't try to lay it off on somebody else. He says, I didn't do this, it wasn't me.

Whatever you feel about the strategy utilized by [the investigating detectives] in trying to get this confession, and I know I have my own feelings, there is a lot of talk in legal circles about the propensity, especially amongst young men of false confessions after being made fearful by police and being told the only way to get out of it, the only way to see daylight, the only way for you to not lose the rest of your life is to admit it, and suggesting what might have happened and giving those kind of cues.  I have my own feelings about that, because I think it's wrong. And I don't think we should engage in that, but obviously to some degree it's legal, although what sense does it make when you read **Miranda** warnings and tell an individual you can stop whenever you want. And [Appellant] said I don't want to talk anymore, but he doesn't give the magic "lawyer" word, and so we'll keep going.  We'll keep trying to make him talk.  It doesn't matter if he says he wants to stop, even though we told him he could stop if he wanted to, I guess that's okay. You guys can think about whether that's okay, but that might even be a subject for another day, because despite that and despite that we know -- despite the fact we know that on occasion that coerces false confessions.  Here [Appellant] said I didn't do it.

N.T., 7/20/2018, at 71-74.

Taken altogether, we discern no abuse of discretion or error of law in rejecting Appellant's claim of trial counsel ineffectiveness.  Trial counsel had a reasonable strategy for allowing the jury to see and hear the recorded police interview.  In that interview, Appellant consistently denied his involvement in the crimes at issue, even when faced with admittedly coercive police tactics.  Eventually, Appellant requested that the police end the interview.  In closing argument, trial counsel urged the jury to find Appellant not guilty because, as the video confirmed, he repeatedly denied involvement despite pressure from police interrogators.  Under these circumstances, we reject Appellant's suggestion on appeal that trial counsel lacked a reasonable strategy in forgoing an objection to the video tape because "the sole purpose of showing

the jury the tape was to highlight [Appellant's] silence by refusing to implicate anyone in the commission of the crime" or that the "jurors were likely to view [Appellant's] silence as a tacit admission of guilt." Appellant's Brief at 10-11. Here, Appellant adamantly disavowed his role in the robbery and shootings to the police before exercising his right to remain silent. As such, we agree with the PCRA court that counsel pursued a reasonable trial strategy, *i.e.* one that furthered the interest of his client, in using the video to visually and audibly demonstrate for the factfinder how the police improperly or corruptly pressured or coerced Appellant during the interrogation. Moreover, in the absence of Appellant's live testimony at trial, the video allowed the jury to observe Appellant, in his own voice and image, disavow his involvement to police. Based upon our review of the record and applicable law, it cannot be said that trial counsel was ineffective for failing to object to the admission of the videotaped police interrogation because trial counsel had a reasonable strategy. As such, the first portion of Appellant's claim fails.

Next, in support of his argument that trial counsel was ineffective for failing to object to the Commonwealth's closing argument, Appellant submits:

> During closing argument, the [Commonwealth] highlighted [Appellant's] silence by arguing, "When he's in that interview room he doesn't say, look, this is me, this is my life, it was Cameron. He doesn't say that."

*Id.* at 10. Appellant claims that "the Commonwealth told the jury what it believed [Appellant] should have said if in fact he were innocent and he knew that someone else committed the crime." *Id.* at 17; *see also id.* at 15 ("By

- 8 -

the prosecutor suggesting what he believed [Appellant] should have but did not say to police, this amounted to the Commonwealth commenting on [Appellant] exercising his federal and state constitutional right to remain silent."). As a result, Appellant argues that trial counsel was ineffective for failing to object to the Commonwealth's closing argument. *Id.* at 17.

Our Supreme Court previously determined:

> a claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is fairness of the trial, not the culpability of the prosecutor. Finally, not every intemperate or improper remark mandates the granting of a new trial; reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.
>
> &ast; &ast; &ast;
>
> [Our Supreme Court] has recognized that counsel [is] not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel. Under some circumstances, trial counsel may forgo objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections sometimes highlight the issue for the jury, and curative instructions always do.

*Commonwealth v. Koehler*, 36 A.3d 121, 144-146 (Pa. 2012) (internal citations, quotations, and original brackets omitted). Furthermore, "[a] prosecutor does not engage in misconduct when his statements are based on the evidence or made with oratorical flair." *Commonwealth v. Carson*, 913 A.2d 220, 237 (Pa. 2006) (citation omitted). "Additionally, a prosecutor must be permitted to respond to arguments made by the defense." *Id.* (citation omitted). Finally, it is well settled that "[i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa. Super.2006) (citation omitted).

Initially, the PCRA court noted that Appellant "mischaracterizes the statement made by counsel for the Commonwealth" during closing argument by relying upon an isolated comment and omitting the statements made thereafter. PCRA Court Opinion, 3/22/22, at 7. More specifically, the PCRA court recognized:

> The statement alleged by [Appellant] in his PCRA [petition] is as follows: "When [Appellant's] in the interview room he doesn't say, look, this is me, this is my life, it was Cameron. He doesn't say that." However, this [was] not the end of the sentence, [] the Commonwealth continues to say[,] "He doesn't say that. [Appellant] says he was with Miras and we all know where Miras was." Thus, [Appellant] mischaracterizes the statement made by counsel for the Commonwealth. The Commonwealth was not "exploiting" [Appellant's] post-arrest silence, [it] was pointing out inconsistencies/consistencies in the testimony of witnesses and addressing the arguments made by trial counsel for [Appellant] in his closing.

- 10 -

*Id.*

We agree with the PCRA court's analysis. Appellant misconstrued the closing statement at issue and isolated a single comment out of context. In total, the comments challenged on appeal related to the evidence presented at trial and constituted fair response to defense counsel's closing remarks as set forth above at length in our examination of Appellant's first contention on appeal. The Commonwealth simply did not comment on Appellant's silence. Rather, the Commonwealth focused on what Appellant actually said to the police when he admitted that he was with co-defendant, Miras Kelly, at the time of the crimes. As such, we conclude the Commonwealth did not commit prosecutorial misconduct and there is no merit to Appellant's claim that trial counsel was ineffective for failing to object to the Commonwealth's closing argument.

We also recognize that the Pennsylvania Supreme Court has held that "the arguments of counsel are not evidence." *Commonwealth v. Philistin*, 53 A.3d 1, 14 (Pa. 2012) (citation omitted). Hence, an "appellant [is] not prejudiced by [the Commonwealth's closing] remark[s when] the trial court instruct[s] the jury in its general cautionary instruction following closing arguments that none of the closing arguments [is] evidence since the jury is the sole finder of facts from the evidence presented at trial and the sole judge of a witness' credibility." *Commonwealth v. Hawkins*, 701 A.2d 492, 511 (Pa. 1997) (citation omitted) (our law presumes that juries follow the court's instructions as to the applicable law). Here, the trial court instructed the jury

that the arguments of counsel were not evidence and that the jurors were the sole factfinders. N.T., 7/20/2018, at 99-100. As such, we presume that the jury followed the trial court's instruction. Accordingly, for all of the foregoing reasons, we agree with the PCRA court that Appellant is not entitled to relief on his interrelated claims of trial counsel ineffectiveness.

Finally, we reject Appellant's argument that an evidentiary hearing was required in order to determine whether trial counsel had a reasonable strategy. Our Supreme Court has held that "generally, the [PCRA] court should not glean from the record whether counsel had a reasonable basis for his action or inaction absent an evidentiary hearing, and that it is only in the most clear-cut cases that the reasons for counsel's conduct are apparent from the record." *Commonwealth v. Hanible*, 30 A.3d 426, 442 (Pa. 2011) (citation omitted). In this case, as detailed above, trial counsel's strategy was clear-cut and entirely apparent from the record based upon his opening statement, his cross-examination of the various witnesses at trial, and his closing argument. Thus, an evidentiary hearing was unwarranted.

Order affirmed.

Judgment Entered.

![signature]

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2022